UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE LAW OFFICES OF DAVID FREYDIN, P.C. and DAVID FREYDIN, Plaintiff, v. VICTORIA KRAVCHUK, TETIANA KRAVCHUK, ANASTASIA SHMOTOLOKHA, NADIA ROMENETS, and JOHN DOES 1-10 Defendants | No. 17-cv-08034 Hon. Harry D. Leinenweber |

**DEFENDANTS TETIANA KRAVCHUK'S AND NADIIA ROMENETS'
MEMORANDUM OF LAW IN SUPPORT OF THEIR
JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## I.  INTRODUCTION

This case arises from a series of online posts written by Defendants, members of the

Ukrainian community in response to comments made by Plaintiff David Freydin ("Freydin")

which they perceived as derogatory towards their nationality.[1] Upset at being called "not

professional" due to his comments and being assessed on Facebook with but a single "star,"

Freydin filed suit on behalf of himself and his law firm to "force Defendants out of their hiding

places, to expose the 'writers' to the light of day, to enjoin their continued tortious conduct and

---

[1] These comments are referenced repeatedly in Plaintiffs' Complaint (*see, e.g.* Complaint Exhibit A). Yet, Plaintiffs omit any direct mention of what triggered the expressions of indignation that form the basis of their claims. As the substance of Freydin's comments are therefore outside the pleadings for purposes of this 12(b)(6) motion, they are not attached to nor specifically relied upon in this Memorandum. Nevertheless, the Complaint does not specifically deny the existence of these comments, alleging only that the defendants' characterization of Freydin and his comments was somehow "false."

1

[sic] against Plaintiffs and Plaintiffs' agents, and to recover the substantial damages they have caused Plaintiffs." Complaint ¶ 4.

This lofty rhetoric notwithstanding, Plaintiffs' crusade runs afoul of the U.S. Constitution. The writings which the Complaint attributes to Defendant Tetiana Kravchuk, ("Kravchuk") merely express her opinion of Freydin and his controversial views about people from Ukraine. Because the right to express such opinions is protected by the First Amendment, Kravchuk's statements are by definition not defamatory. With respect to Defendant Nadiia Romenets ("Romenets"), Plaintiff does not attribute any statements whatsoever to her. Plaintiff is suing Romenets for her single one-star review of Freydin on his business Facebook page. Romenets' rating is clearly constitutionally protected opinion.

Plaintiffs fare no better in their attempt to refashion their defamation claim as tortious interference or false light or in their efforts to tie all of Freydin's detractors together in a grand conspiracy. Even if such causes of action were not barred by the same constitutional concerns that undermine Plaintiffs' defamation theory, Plaintiffs have failed to allege elements fundamental to these claims, such as any specific relationship or contract with which Kravchuk's or Romenets's actions interfered or any agreement between Kravchuk, Romenets, and the other defendants to criticize Freydin.

Finally, Plaintiffs' have not shown by competent proof that the amount in controversy is $75,000, as required by 28 U.S.C. § 1332 to sustain diversity jurisdiction. Indeed, Plaintiffs' have not provided any tangible evidence or non-speculative arguments for damages that warrant the $100,000 in damages Plaintiffs' are purportedly seeking. As such, there is no diversity jurisdiction.

For these reasons, and as set forth in more detail herein, Defendants Kravchuk and Romenets join Defendant Victoria Chamara ("Chamara") (Docs. 11-12) in arguing to this Court that Plaintiffs' complaint should be dismissed.

## II.    <u>BACKGROUND</u>

According to the Plaintiffs' Complaint, Defendants Kravchuk, Romenets (collectively "Defendants"), and others posted several comments to various websites expressing their opinions of Freydin. Complaint ¶ 1. Specifically, the Complaint accuses Kravchuk of posting a comment to the Facebook page of Freydin's law firm, expressing her opinion that Freydin is "not professional" and "discriminates other nationalities" and that she doesn't "recommend to do business with this attorney," advising readers "Don't waste your money!" Complaint ¶ 8 and Exhibit C. Romenets is accused of leaving a "one-star rating" on the same Facebook page. Complaint ¶ 10 and Exhibit E. Other comments calling Freydin, among other things, "unprofessional" and "disrespectful" were posted by other individuals to other websites, posts for which the Complaint apparently also holds Kravchuk and Romenets accountable as "participant[s] in the community of Internet posters." Complaint ¶¶ 1 and 8. Freydin therefore brought this action on behalf of himself and his law firm against Kravchuk, Romenets, and various other named and unnamed defendants for "libel *per se*" (Complaint ¶¶ 16-21), "false lights" (Complaint ¶¶ 22-25), "tortious interference in contractual relationships" (Complaint ¶¶ 26-31), "tortious interference with prospective business relationships" (Complaint ¶¶ 32-36) and "civil conspiracy" (Complaint ¶¶ 37-41).

## III.    <u>LEGAL STANDARD</u>

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P.

12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiffs' favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Though a complaint need not provide detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Similarly, in deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *United Transportation Union v. Gateway Western Railway Co.,* 78 F.3d 1208, 1210 (7th Cir. 1996). However, if material facts affecting jurisdiction are in dispute, the court is permitted to look beyond the factual allegations and view the evidence that has been submitted in the case to determine whether jurisdiction exists. *Sapperstein v. Hager,* 188 F.3d 852, 855 (7th Cir. 1999); *Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir. 1993). Throughout the court's inquiry, the burden is on the plaintiff to establish jurisdiction by competent proof. *Sapperstein,* 188 F.3d at 855.

## IV.    **ARGUMENT**

Plaintiffs' Complaint sets forth five theories for relief: (1) libel *per se*; (2) false light invasion of privacy; (3) tortious interference with contractual relationships; (4) tortious interference with a prospective business relationship; and (5) civil conspiracy. None of these theories state a claim upon which relief can be granted based on the alleged facts. Counts I and II for libel *per se* and false light invasion of privacy fail because Kravchuk's statements and Romenets' one-star rating are clearly expressions of opinion protected by the First Amendment. Counts III and IV for tortious interference fail for the same reason and also because Plaintiffs do not identify any specific third parties to whom Kravchuk directed her statements (or Romenets her one-star rating) or any specific contract or relationship with which Defendants' actions interfered. Count V for civil conspiracy must be dismissed because Plaintiffs fail to plead any agreement between Defendants and because there can be no conspiracy when the underlying activity is lawful, in this case, expressing the defendants' mutual opinions that Freydin's comments about Ukrainians were offensive. Finally, Plaintiffs' have failed to establish the requisite amount in controversy to satisfy subject matter jurisdiction before this Court.

A.    **Plaintiffs' Count for Libel *Per Se* Must be Dismissed Because Kravchuk's Statements and Romenets' One-Star Review Constitute Opinions Protected by the First Amendment**

To state a claim for defamation in Illinois, "a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Solaia Technology, LLC v. Specialty Pub. Co.*, 221 Ill.2d 558, 579 (2006), (citing *Krasinski v. United Parcel Service, Inc.*, 124 Ill.2d 483, 490 (1988)). Consistent with the First Amendment, even a statement that falls into a recognized category of defamation *per se* is not actionable unless it contains an assertion of fact that is provably false. *Milkovich v. Lorain Journal Co.* 497 U.S. 1,

20 (1990); *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 339-40 (1974) ("Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."). In determining whether an expression can be construed as stating a fact, Illinois courts consider "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Solaia Technology, LLC v. Specialty Publishing Co*., 221 Ill.2d at 581 (finding the statement that plaintiffs were "deeply greedy people" to be constitutionally protected).

Here, Plaintiffs have broadly alleged that "one or more Defendants" made statements that impute "a want of integrity in [Plaintiffs'] employment." (Complaint ¶ 18.) This imputation allegedly arose from "statements that Plaintiffs or Plaintiffs' agents, 'are not professional,' are 'inappropriate and unethical,' that the law office 'discriminates against other nationalities,' provides 'terrible customer service,' 'should not be allowed to practice law,' and 'are a disgrace to this Country!'" (Complaint ¶ 18.) However, only the phrases "not professional" and "discriminates against other nationalities" are attributed to Kravchuk, and the Complaint does not allege that Romenets made any literal statements whatsoever.[2] (Complaint ¶ 8.)

None of the words Kravchuk is alleged to have written can be construed as anything except an expression of her opinion. None of her statements have any precise and readily understood meaning; none are verifiably false. There is no objective basis upon which to determine whether someone is or is not "professional." There is no precise criteria for when an

---

[2] Indeed, despite the use of quotation marks, several of these statements do not appear anywhere in Plaintiffs' exhibits or preceding allegations and appear to be simply paraphrasing the general gist of the defendants' collective posts.

attorney's attitudes about a particular nationality cross the line into "discrimination." These are purely matters of opinion.

Romenets's "one-star rating," if indeed it conveys anything, also simply expresses an opinion.

To the extent Kravchuk's or Romenets's negative opinions of Freydin were based on any undisclosed fact, the Complaint makes it clear that they were based on Freydin's comments about Ukrainians, comments that are referenced multiple times in the Complaint (*see* Complaint Exhibits A and B) and which Plaintiffs pointedly fail to deny.

### i. _Defendants' Alleged Statements Lack a Precise and Readily Understood Meaning_

The opinions expressed in Exhibits C and E to the Complaint lack any precise and readily understood meaning. The First Amendment protects "overly loose, figurative, rhetorical, or hyperbolic language, which negates the impression that the statement actually presents facts." *Hopewell v. Vitullo*, 299 Ill.App.3d 513, 518 (1998). Language that is "loose, figurative, and exaggerated tends to be opinion rather than fact." *Skolnick v. Correctional Medical Services, Inc.*, 132 F.Supp.2d 1116, 1127 (N.D. Ill. 2001). In *Hopewell*, the court found that the statement "fired because of incompetence" does not have a precise and readily understood meaning. Although "'incompetent' [was found to be] an easily understood term, its broad scope renders it lacking the necessary detail for it to have a precise and readily understood meaning." *Hopewell*, 299 Ill.App.3d at 519.

Similarly, Kravchuk's characterization of Freydin as someone who is "not professional" and "discriminates against other nationalities" may consist of generally understood terms, but they lack the necessary detail to have a precise and readily understood meaning. The exact criteria for what makes someone "professional" will vary wildly from person to person, as will

the standards for when that threshold of "professionalism" is met. Likewise, "discriminates" describes a broad range of attitudes and behaviors. "Discriminates against other nationalities" tells you far less about any specific factual occurrence than does the phrase "fired because of incompetence." The loose, imprecise rhetoric of Kravchuk's post clearly signals an expression of opinion rather than a statement of any false fact.

Romenets's "one-star rating" is even more ambiguous. Even accepting Freydin's characterization of this solitary star as "negative," there are an infinite number of reasons why someone might rate an attorney negatively. A rating has no precise meaning and conveys no factual content.

### ii.    *The Statements are Not Objectively Verifiable*

Moreover, it is impossible to objectively verify or disprove Kravchuk's characterization of Freydin as "not professional" and someone prone to "discriminate[] against other nationalities." Defamatory statements must be rooted in a false factual assertion. *Piersall v. SportsVision of Chicago*, 230 Ill.App.3d 503, 511 (1992) (finding that defendant's general statement that "[plaintiff] is a liar" is nonactionable opinion because it lacked a factual basis surrounding the statement); *see also, Doherty v. Kahn*, 289 Ill.App.3d 544, 554 (1997), abrogated on other grounds by *Soh v. Target Mktg. Sys., Inc.*, 2004 WL 2192408, at *4 (finding that the statements that plaintiff was 'incompetent,' 'lazy,' 'dishonest,' 'cannot manage a business,' and/or 'lacks the ability to perform landscaping services'" to be nonactionable opinion because there were no specific false facts at the root of the statements.).

To the extent that there is any factual context for Kravchuk's assessment of Freydin's behavior, it is Freydin's comments about Ukrainians. That he did in fact make such comments is

undenied (and undeniable). Whether those comments constitute "discriminat[ion] against other nationalities" or render him "not professional" is completely subjective.

This unverifiability is even more obvious with respect to Romenets's one-star review, since ratings systems are <u>specifically designed to measure subjective assessments</u>.

In short, Plaintiffs do not allege any objectively false statement which would provide a basis for a defamation suit.

**B.    Plaintiffs' Count for False Light Invasion of Privacy Must be Dismissed Because Plaintiffs Do Not Allege Special Damages Or Actual Malice**

Plaintiffs cannot evade the First Amendment by repleading their defamation *per se* claims as a false light invasion of privacy.

"Three elements are required to state a cause of action for false-light invasion of privacy: (1) the plaintiffs were placed in a false light before the public as a result of the defendants' actions; (2) the false light in which the plaintiffs were placed would be highly offensive to a reasonable person; and (3) the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kapotas v. Better Government Association*, 2015 IL App (1st) 140534 ¶ 77. In addition, a plaintiff alleging false light based on statements that are not defamatory *per se* must plead and prove special damages. *Id.* Further, a false light claim based on expression must be dismissed as unconstitutional where the plaintiff fails to allege any false statement of fact. *Id* at ¶ 78.

Here, Plaintiffs' false light claim fails for the same reasons as their defamation claim. As discussed above, Plaintiffs have not alleged any false statements of fact. Defendants' statements are also not *per se* defamatory, and Plaintiffs have not alleged special damages. Further, Plaintiffs have not pled nor alleged facts demonstrating that either Kravchuk or Romenets acted with malice or reckless disregard for truth. Plaintiffs make a conclusory statement that the

collective defendants all collectively made statements "with either knowledge of their falsity, or with reckless disregard of the truth" (Complaint ¶ 19), but, unsupported by any allegation of fact, this amounts to a mere "threadbare recital" of the claim's elements that fails to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Therefore, Plaintiffs' count for false light invasion of privacy should be dismissed.

**C.     Plaintiffs' Count for Tortious Interference With Contractual Relations Must be Dismissed Because No Specific Third Party Agreements Were (Tortiously or Improperly) Interfered With**

To state a claim for tortious interference with contractual relations, a plaintiff must sufficiently allege: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other caused by the defendant's wrongful conduct; and (5) damages. *Grund v. Donegan*, 700 N.E. 2d 157 (1998) (citing *Strosberg v. Brauvin Realty Services, Inc.*, 295 Ill.App.3d 17, 32-33 (1998). To properly state a cause of action for tortious interference, a plaintiff must "first plead that he or she had a valid contract or a valid business expectancy, which requires allegations of business relationships <u>with specific third parties</u>." *DuPage Aviation Corp. v. DuPage Airport Authority*, 229 Ill.App.3d 793, 803 (1992) (emphasis added).

Plaintiffs' complaint does not state a plausible cause of action for tortious interference. Plaintiffs fail to cite to a *single specific* third party with whom they had an active business relationship. Rather, Plaintiffs state in general and conclusory terms that it had third party "clients that retained Plaintiffs to represent them in court, and attorneys who performed work as agents or of counsel to Plaintiffs." Complaint ¶ 27. Count III fails for this reason alone. *See DuPage*, 229 Ill.App.3d 793 (holding that general and conclusory allegations that plaintiffs were

continually entering into business relationships with others was fatal to the tortious interference claim).

Additionally, for the same reasons set forth in Section IV(A), Plaintiffs' claims also fail because they have not identified any wrongful conduct by Kravchuk or Romenets. They also do not identify any specific breach of a specific contract caused specifically by the two postings on Plaintiffs' business Facebook page, alleging merely that the defendants' collective conduct "caused subsequent breaches of parties [sic] to which Plaintiffs were a party by third parties." (Complaint ¶ 30.) Such "threadbare recitals . . . supported by mere conclusory statements" are not presumed to be true. *Alam v. Miller Brewing Co.* 709 F.3d 662, 666 (7th Cir. 2013).

Plaintiffs have thus failed to allege any of the facts necessary to support their contention that Kravchuk or Romenets tortiously interfered with any contractual relationship. *Twombly*, 550 U.S. at 555.

### D. Plaintiffs Count for Tortious Interference With Prospective Business Relationships Also Must be Dismissed Because No Specific Prospective Third Parties Were Identified

To state a claim for tortious interference with prospective economic advantage, a plaintiff must sufficiently allege that: (1) it had a reasonable expectancy of a valid business relationship; (2) the defendant knew about it; (3) the defendant intentionally interfered with the expectancy, and so prevented it from ripening into a valid business relationship; and (4) the plaintiff was injured. *Frain Group, Inc. v. Steve's Frozen Chillers*, 2015 WL 1186131, at *4 (N.D. Ill. March 10, 2015) (citing *Voyles v. Sandia Mortgage Corp.*, 196 Ill.2d 288, 300–01 (2001)). Like a claim for tortious interference of contract, a plaintiff "states a cause of action only if he alleges a business expectancy with a specific third party." *Schuler v. Abbott Laboratories*, 265 Ill.App.3d 991, 994 (1993); see also *Du Page*, 229 Ill.App.3d 793 at 803. Importantly, a valid claim for

11

tortious interference with business expectancy must allege actions by the defendant specifically "directed towards the party with whom the plaintiff expects to do business." *Schuler*, 265 Ill.App.3d at 994. "It is not enough for the defendant's action to impact a third party; rather, the defendant's action must be directed towards the third party." *Boffa Surgical Grp. LLC v. Managed Healthcare Assocs. Ltd.*, 2015 IL App (1st) 142984 ¶ 28.

Here, again, the Complaint does not state a claim for relief. Plaintiffs fail to identify a single specific third party with whom Plaintiffs expected a business relationship, citing only a generalized and speculative pool of "prospective clients and attorneys who Plaintiffs may have retained or contracted with to represent its clients." (Complaint ¶ 33.) Again, such generalized and conclusory allegations that Plaintiffs "may have retained" some unidentified "prospective clients and attorneys" are insufficient to state a claim for tortious interference. *See, e.g., Huon v. Breaking Media, LLC*, 75 F.Supp.3d 747, 775 (2014) (allegations that plaintiff had an "expectancy of entering into valid business relationships with members of the public" was insufficient to state a claim for tortious interference). The mere hope for or possibility of a future business relationship is insufficient to show a reasonable expectancy of future business. *Frain Group Inc.*, 2015 WL 1186131, at *4; *see e.g., Quantum Foods, LLC v. Progressive Foods, Inc.,* 2012 WL 5520411, at *3 (N.D. Ill. Nov. 14, 2012); *Business Sys. Eng'g, Inc. v. Int'l Bus. Mach. Corp.,* 520 F.Supp.2d 1012, 1022 (N.D. Ill. 2007). Further, Plaintiffs fail to allege actions by Defendants that were specifically directed towards the (unidentified) third party or parties whom Plaintiffs expect to do business. *Schuler*, 265 Ill.App.3d at 994.

Plaintiffs' complaint merely recites the elements of a cause of action and alleges no actual facts that create a plausible claim for relief. Therefore, Plaintiffs' claim should be dismissed.

**E.**  **Plaintiffs Count for Civil Conspiracy Must be Dismissed Because Plaintiffs Do Not Allege the Existence of An Agreement Nor Any Wrongful Conduct**

"Civil conspiracy is defined as 'a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999). To state a claim for civil conspiracy, a plaintiff must allege facts establishing: (1) an agreement to accomplish by concerted action either an unlawful purpose or a lawful purpose by unlawful means; (2) a tortious act committed in furtherance of that agreement; and (3) an injury caused by the defendant. *Reuter v. MasterCard International, Inc.*, 397 Ill.App.3d 915, 927 (2010). The complaint must allege the "necessary and important element" of an agreement. (Internal quotation marks omitted.) *Redelmann v. Claire–Sprayway, Inc.*, 375 Ill.App.3d 912, 924 (2007). A complaint must do more than merely characterize a combination of acts as a conspiracy to survive a motion to dismiss. *Id.* at 923. Moreover, because conspiracy is not an independent tort, if "a plaintiff fails to state an independent cause of action underlying [the] conspiracy allegations, the claim for conspiracy also fails." *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 50 (citing *Indeck North American Power Fund, L.P. v. Norweb PLC,* 316 Ill.App.3d 416, 432 (2000)).

Here, Plaintiffs' claim for civil conspiracy fails because Plaintiffs do not allege the existence of an agreement between the supposed conspirators. Rather, Plaintiffs broadly allege that Kravchuk and Romenets were each "a participant in the community of Internet posters who have defamed and committed other tortious acts against Plaintiff." Complaint ¶ 7. Plaintiffs also allege, that "Defendants collaborated with one another by planning, coordinating and assisting one another in preparing the defamatory statements and negative reviews that were disseminated to third parties via the Internet 'communities' referenced above" (Complaint ¶ 38) but do not

13

provide any factual support for this conclusion. Even if Plaintiffs' conclusory allegation that the defendants "collaborated" was grounded in fact, it falls short of alleging the existence of an actual agreement between Kravchuk, Romenets, and other defendants to engage in the supposed conspiracy against Plaintiffs. Plaintiffs' cause of action for conspiracy should be dismissed on this basis alone.

Moreover, even if Plaintiffs had alleged the existence of an agreement, Plaintiffs' claim for civil conspiracy would still fail because, for the reasons discussed above, none of Plaintiffs' other purported causes of action demonstrate that Defendants had any unlawful purpose or acted by any unlawful means.. *Merrilees*, 2013 IL App (1st) 121897, ¶ 50.

Because Plaintiffs' cause of action for civil conspiracy does not come close to stating a claim that is plausible on its face, Count V should be dismissed.

### F.     Plaintiffs' Claims Do Not Meet The $75,000 Amount In Controversy Required for This Court to Exercise Diversity Jurisdiction

In addition to the legal insufficiencies of Plaintiffs' causes of action against Defendants, the federal courts lack subject matter jurisdiction over the claims, since Plaintiffs' factual allegations do not support a conclusion that the amount in controversy exceeds $75,000.

Plaintiffs rely solely on diversity jurisdiction under 28 U.S.C. § 1332(a) (Complaint ¶ 12.), which requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." It is Plaintiffs' burden to prove the amount in controversy: "if the court's jurisdiction is challenged as a factual matter by either the court or the opposing party, the party invoking the jurisdiction bears the burden of supporting its jurisdictional allegations by 'competent proof.'" *NLFC, Inc. v. Devcom Mid-America, Inc.,* 45 F.3d 231, 237 (7th Cir. 1995), citing *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780,

785, 80 L.Ed. 1135 (1936); *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 543 (7th Cir. 2006) ("[T]he proponent of federal jurisdiction has the burden of proof.").

Here, Plaintiffs allege flatly that "more than $75,000 is in controversy." (Complaint ¶ 12.) However, the Complaint makes little effort to draw a connection between this hefty figure and the handful of Facebook posts in question. Plaintiffs do not allege any specific clients or revenue lost as a result of the negative reactions to Freydin's Ukrainian comments, let alone provide any competent proof of such damages.

Therefore, dismissal is also warranted pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## V.   <u>CONCLUSION</u>

Plaintiffs' lawsuit is a transparent attempt to silence the criticism generated by Freydin's own public comments. None of the causes of action mustered in the Complaint avail him in this effort. Under the First Amendment, Kravchuk and Romenets cannot be held liable for merely expressing their views about Freydin and the way he speaks about people of other backgrounds. Plaintiffs' claims therefore fail as a matter of law and must be dismissed.

Respectfully submitted

/s/ Daliah Saper
Daliah Saper
*One of Defendants' Attorneys*
Daliah Saper
Chad Nold
Saper Law Offices, LLC
505 N. LaSalle, Suite 350
Chicago, Illinois 60654
PH: 312.537.4100
ds@saperlaw.com
chad@saperlaw.com

Dated: February 12, 2018

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused a true and correct copy of the foregoing, **DEFENDANTS VICTORIA KRAVCHUK'S AND NADIA ROMENETS' MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT**, to be served on the attorneys of record listed below by filing the foregoing electronically using the CM/ECF filing system on this 12th day of February, 2018:

David Freydin
Law Offices of David Freydin Ltd
8707 Skokie Blvd, Suite 305
Skokie, IL 60077
david.freydin@freydinlaw.com

In addition, the undersigned served Anastasia Shmotolokha via regular mail at:

Anastasia Shmotolokha
1910 Kickwall Crescent
Mississauga, ON
L4X 1P1

/s/Daliah Saper
An Attorney for Defendants Victoria Kravchuk and
Nadia Romenets